IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **NANCY ESAW** | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JURY DEMAND** |
| | ) | |
| **COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC** | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Nancy Esaw (Plaintiff), by and through her attorneys, Jeffrey R. Kulwin, KULWIN, MASCIOPINTO & KULWIN, L.L.P., respectfully submits her complaint against defendant Comcast Cable Communications Management, LLC (Defendant), states as follows:

### INTRODUCTION

1. This action is brought against defendant Comcast pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e, et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq., (ADEA) for willfully taking adverse employment actions against Plaintiff for unlawful reasons, including based on her race, age and in retaliation for reporting unlawful conduct.

2. Defendant provided false and pretextual reasons for the adverse employment actions taken against Plaintiff. Defendant treated less experienced, less qualified and substantially younger employees outside of the protected classes better than Plaintiff.

3. Plaintiff seeks actual, compensatory, and statutory and punitive damages arising out of and related to Defendant's unlawful employment conduct, including an award of reasonable attorneys' fees, costs and expenses.

1

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff is a black female who is who is over forty (40) years of age.

5. Defendant is a global telecommunications conglomerate that is the largest broadcasting and cable television company in the world by revenue. Defendant is the second-largest pay-TV company, the largest cable TV company and the largest home Internet service provider in the United States. Defendant is also the nation's third-largest home telephone service provider. Defendant's headquarters are located in Philadelphia, Pennsylvania.

6. Defendant, at all times relevant hereto, operated and did business within the venue and jurisdiction of this judicial circuit and is an employer as defined by 29 U.S.C. § 621, et. seq. and 42 U.S.C. § 2000e(b).

7. Defendant is engaged in an industry affecting interstate commerce. Defendant employs over 500 people.

8. During the relevant time period, Defendant employed Plaintiff in its Chicago, Illinois office.

9. Jurisdiction is proper in this Court pursuant to, among other statutes, 28 U.S.C. §§ 1331 and 1343. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claim arises out of incidents which occurred within this judicial district.

## ALLEGATIONS COMMON TO ALL CLAIMS

10. At all times relevant hereto, Plaintiff met or exceeded Defendant's legitimate employment expectations. As set forth herein, Defendant had no legitimate reason for taking adverse employment actions against Plaintiff. Defendant's stated reason(s) for the employment actions taken against Plaintiff were a mere pretext for unlawful employment actions.

11. Plaintiff filed this complaint subsequent to the timely filing of a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

12. Plaintiff filed this complaint pursuant to the Right to Sue Letter issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached hereto as Exhibit B.

13. In 2004, Plaintiff was hired by Defendant to fill a Customer Account Executive position in Chicago, Illinois.

14. Prior to being hired by Defendant, Plaintiff had extensive experience in the telecommunications industry and in customer service in particular.

15. Over the next eleven years, Defendant repeatedly promoted Plaintiff to fill to advanced positions, including in 2013 when she was promoted to the Community Account Representative position.

16. Throughout her career working for Defendant, Plaintiff received excellent performance evaluations, yearly merit pay increases and maximum commission bonus payments.

17. During the last month of her employment (December 2015), Plaintiff earned and was entitled to a commission bonus payment equal to 150% of the available bonus based on the fact that she exceeded the sales goals that Defendant set for her.

18. Prior to 2014, Plaintiff was responsible for Defendant's multiple dwelling unit building (MDU) customers in one of Defendant's most prestigious and profitable areas in Chicago: the Gold Coast.

19. In or around 2011, Plaintiff began to engage in protected activity by, among other things, reporting and/or opposing unlawful work conduct report to, among others, Defendant's Human Relations Department (Comcast-HR) pursuant to its "Open Door Policy." For example, Plaintiff reported that she was unfairly being denied advancement and employment opportunities based on her sex (female), age (over 40), color (black) and her race (African-American) and that she was being subjected to a hostile work environment based on derogatory comments made to her and about her based on her age and her race.

20. For example, between 2011 and 2015, Plaintiff's direct supervisors and colleagues who were substantially younger than Plaintiff and/or not African-American, among other things, made derogatory statements to and about Plaintiff based on her age, e.g., they criticized Plaintiff for joining Defendant's "Young Professionals Club" stating specifically to Plaintiff that the club was not intended for her because it was intended for "young" professionals; stated to Plaintiff that they thought Plaintiff was the "same age" as them and "one of us," e.g., under 40 years of age; stated to Plaintiff that people did not like her because she was "one of them," e.g., over 40 years of age; stated to Plaintiff that she "has been around a long time" and it was "time for her to get married"; and directed Plaintiff's co-workers to find out from Plaintiff the specific year in which Plaintiff was born.

21. Additionally, Plaintiff's direct supervisors and colleagues who were substantially younger than Plaintiff and/or not African-American, among other things, also made derogatory statements to and about Plaintiff based on her color and race, e.g., she was told referring to her verbal communications abilities that she "doesn't sound like a black person"; she was told she was a "different kind of black person" because she was raised by both of her parents and not on

welfare contrary to the derogatory stereotype of African-American families; and she was told she was not liked by Defendant's management because she was black.

22. Between 2011 and 2015, and after she began to engage in protected activity by, among other things, reporting and/or opposing unlawful work conduct, Plaintiff was subjected to unlawful retaliatory conduct by, among other ways, being denied employment opportunities in favor of less experienced and less qualified individuals who were male, who were not over 40 years of age and who were not black and/or not African-American.

23. For example, Defendant assigned substantially younger and non-African-American employees to work on the most prestigious new construction projects in prime Chicago areas. When Plaintiff asked why she was not assigned to those prestigious projects, she was told that her "look" would not work in those areas and that Defendant's customers who lived in those areas were "prejudiced" against her based on her color, race and age.

24. In 2014, Plaintiff was stripped of her responsibility over the Gold Coast MDUs and, instead she was assigned to work in the south east corridor which included Chicago's lowest income residents and the four largest housing projects which reduced her customer portfolio by almost 50%.

25. Despite these undesirable circumstances, Plaintiff nevertheless continued to excel in her position and meet and exceed her sales goals.

26. However, despite the fact that Plaintiff consistently and repeatedly exceeded the sales goals which were set for her, she was never provided with Defendant's MVP awards which rewarded employees with financial bonuses and professional and public commendations for excellent sales performance. Instead, Defendant repeatedly provided awards to employees who

5

were men, under 40 years of age and/or not black or African American and, upon information and belief, employees who did not make reports to Comcast-HR.

27. Beginning in 2012, Defendant attempted to manufacture reasons to force Plaintiff to quit and/or to terminate her for false and pretextual reasons.

28. For example, in 2012 and 2013, Plaintiff was provided written discipline for alleged misconduct that either did not occur and/or were imposed in a manner contrary to Defendant's written policies and established practices.

29. Plaintiff was stripped of her responsibility for one of Defendant's most desirable sales areas, the Chicago Gold Coast, apparently in an effort to force Plaintiff to leave or fail in her position. When Plaintiff instead continued to exceed Defendant's legitimate expectations by, among other ways, receiving excellent performance reviews and exceeding her sales goals, Defendant claimed that Plaintiff should be terminated for false reasons.

30. For example, Defendant has claimed that Plaintiff was purportedly being "unprofessional" and "yelling" at a customer. However, Defendant has failed to produce a recording of the call. Upon information and belief, Defendant has erased and deleted the recording of the call. Defendant's assertion is directly contradicted by Plaintiff's eleven years of excellent work performance for Defendant.

31. For these and other reasons, based on the information available, Defendant provided a false reason to terminate Plaintiff as a mere pretext to hide unlawful employment actions including, among others, discrimination in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act and retaliation for engaging in protected activity under federal employment law.

## COUNT I
### (Violation of Title VII of the Civil Rights Act of 1964)

1-31. Plaintiff incorporates by reference paragraphs 1-31 as if fully stated herein.

32. In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e, et seq., Defendant engaged in the discriminatory acts alleged herein and arising out of, and related to, the Charge of Discrimination attached hereto as Exhibit A and incorporated herein by reference.

33. As a result of Defendant's discriminatory conduct, as aforesaid, Plaintiff has suffered injury to her career, as well as other injuries for which she is entitled to actual, compensatory and liquidated damages, as well as equitable relief, pursuant to the Civil Rights Act of 1964.

34. Defendant's discriminatory conduct, as alleged here, was done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff Nancy Esaw prays as follows

A. A finding be entered that Defendant intentionally violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.;

B. Reinstating the Plaintiff to her former job position or a comparable position with respect to pay, responsibilities, seniority and benefits, or if Defendant cannot reinstate the Plaintiff, to award Plaintiff front pay, lost employee benefits and retirement benefits until she attains the age of 75;

C. Making the Plaintiff whole by paying for lost back pay, employee benefits, retirement benefits, liquidated and punitive damages;

D. For attorney's fees and costs of this suit, including expert witness fees;

E. For pre-judgment interest in an amount to be determined at the time of trial and

F. For such other relief as is just and equitable.

## COUNT II
### (Age Discrimination in Employment Act)

1-34. Plaintiff alleges herein by reference the allegations contained in paragraphs 1-34 above as if fully stated herein.

35. Plaintiff at all times pertinent hereto was a person protected by the provisions of the ADEA.

36. In direct violation of the ADEA, Defendant engaged in the discriminatory acts alleged herein and described in the Charge of Discrimination attached hereto as Exhibit A and incorporated herein by reference.

37. As a result of Defendant's discriminatory conduct, as aforesaid, Plaintiff has suffered injury to her career as well as other injuries for which she is entitled to compensatory and liquidated damages as well as equitable relief pursuant to the ADEA.

38. Defendant's discriminatory conduct, as aforesaid, was done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff Nancy Esaw prays as follows

A. A finding be entered that Defendant intentionally and willfully discriminated against Plaintiff, on the basis of age, in violation of the ADEA;

B. Reinstating the Plaintiff to her former job position or a comparable position with respect to pay, responsibilities, seniority and benefits, or if Defendant cannot reinstate the Plaintiff, to award the Plaintiff front pay, lost employee benefits and retirement benefits until she attains the age of 75;

C. Making the Plaintiff whole by paying for lost back pay, employee benefits, retirement benefits, liquidated and punitive damages;

D. For attorney's fees and costs of this suit, including expert witness fees;

  E.  For pre-judgment interest in an amount to be determined at the time of trial and

  F.  For such other relief as is just and equitable.

## COUNT III
### (Retaliation)

  1-38. Plaintiff alleges herein by reference the allegations contained in paragraphs 1-38 above as if fully alleged herein.

  39. Based upon, among other things, the foregoing facts, as well as others, Plaintiff was subjected to unlawful employment actions in retaliation for engaging in protected activity by, among other things, reporting and/or opposing unlawful work conduct.

  40. In direct violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e, <u>et. seq.</u>, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, <u>et. seq.</u>, Defendant retaliated against Plaintiff for engaging in protected activity by, among other things, reporting and/or opposing unlawful work conduct.

  41. As a result of Defendant's retaliatory conduct, as aforesaid, Plaintiff has suffered injury to her career, as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief, under federal law.

  42. Defendant's discriminatory conduct, as alleged here, was done with malice and/or with reckless indifference to Plaintiff's rights.

  WHEREFORE, Plaintiff Nancy Esaw prays as follows:

  A.  A finding be entered that Defendant intentionally and willfully retaliated against Plaintiff for engaging in protected activity by, among other things, complaining about and/or opposing unlawful work conduct;

  B.  Reinstating the Plaintiff to her former job position or a comparable position with respect to pay, responsibilities, seniority and benefits, or if Defendant cannot reinstate the

Plaintiff, to award Plaintiff front pay, lost employee benefits and retirement benefits until she attains the age of 75;

      C.      Making the Plaintiff whole by paying for lost back pay, employee benefits, retirement benefits, liquidated and punitive damages;

      D.      For attorney's fees and costs of this suit, including expert witness fees;

      E.      For pre-judgment interest in an amount to be determined at the time of trial and

      F.      For such other relief as is just and equitable.

### PLAINTIFF DEMANDS A TRIAL BY JURY

      Respectfully submitted,

      /s/ Jeffrey R. Kulwin
      One of the attorneys for Nancy Esaw

Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 N. Clark, Suite 2500
Chicago, IL 60601
312/641-0300