# Exhibit A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | 440-2016-03478 |

Illinois Dep't of Human Rights                and EEOC
*State or local Agency, if any*

| Name (indicate Mr. Ms. Mrs.)<br>Nancy Esaw | Home Phone (Incl. Area Code)<br>773-419-6774 | Date of Birth<br>2-15-59 |
|---|---|---|
| Street Address<br>2633 W. 93rd Place | City, State and ZIP Code<br>Chicago, IL 60647 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Comcast | No. Employees, Members<br>Est. 500+ | Phone No. (Include Area Code) |
|---|---|---|
| Street Address<br>1701 John F. Kennedy Blvd | City, State and ZIP Code<br>Philadelphia, PA 19103-2838 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

_XX_ RACE  _XX_ COLOR  _XX_ SEX  _ RELIGION  _ NATIONAL ORIGIN

_XX_ RETALIATION  _XX_ AGE  _ DISABILITY  _ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                     Latest
December 15, 2015

_XX_ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s))*:

Within the past 300 days, Respondent has discriminated against me on the basis of my race, color, sex, age and/or in retaliation for reporting unlawful employment actions.

See Exhibit A, attached hereto and incorporated herein by reference.

RECEIVED EEOC
APR 07 2016
CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

3/31/2016
Date           Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLANANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

## EXHIBIT A

Nancy Esaw v. Comcast

EEOC Charge No. _____

In 2004, Nancy Esaw (Ms. Esaw) was hired by Comcast to fill a Customer Account Executive position in Chicago, Illinois. Prior to being hired by Comcast, Ms. Esaw had extensive experience in the telecommunications industry and in customer service in particular. Over the next eleven years, Comcast repeatedly promoted Ms. Esaw to fill to advanced positions, including in 2013 when she was promoted to the Community Account Representative position. Throughout her career at Comcast, Ms. Esaw received excellent performance evaluations, yearly merit pay increases and maximum commission bonus payments. In fact, during the last month of her employment (December 2015), Ms. Esaw earned and was entitled to a commission bonus payment equal to 150% of the available bonus based on the fact that she exceeded the sales goals that Comcast set for her. Prior to 2014, Ms. Esaw was responsible for Comcast's multiple dwelling unit building (MDU) customers in one of Comcast's most prestigious and profitable areas in Chicago: the Gold Coast.

In or around 2011, Ms. Esaw began to report to, among others, the Comcast Human Relations Department (Comcast-HR) pursuant to its "Open Door Policy" that she was unfairly being denied advancement and employment opportunities based on her sex (female), age (over 40), color (black) and her race (African-American) and that she was being subjected to a hostile work environment based on derogatory comments made to her and about her based on her age and her race. For example, between 2011 and 2015, Ms. Esaw's direct supervisors and colleagues who were substantially younger than Ms. Esaw and/or not African-American, among other things, made derogatory statements to and about Ms. Esaw based on her age, e.g., they criticized Ms. Esaw for joining Comcast's "Young Professionals Club" stating specifically to Ms. Esaw that the club was not intended for her because it was intended for "young" professionals; stated to Ms. Esaw that they thought Ms. Esaw was the "same age" as them and "one of us," e.g., under 40 years of age; stated to Ms. Esaw that people at Comcast did not like her because she was "one of them," e.g., over 40 years of age; stated to Ms. Esaw that she "has been around a long time" and it was "time for her to get married"; and directed Ms. Esaw's co-workers to find out from Ms. Esaw the specific year in which Ms. Esaw was born. Additionally, Ms. Esaw's direct supervisors and colleagues who were substantially younger than Ms. Esaw and/or not African-American, among other things, also made derogatory statements to and about Ms. Esaw based on her color and race, e.g., she was told referring to her verbal communications abilities that she "doesn't sound like a black person"; she was told she was a "different kind of black person" because she was raised by both of her parents and not on welfare contrary to the derogatory stereotype of African-American families; and she was told she was not liked by Comcast management because she was black.

Between 2011 and 2015, and after she began to report to Comcast-HR, Ms. Esaw was subjected to unlawful retaliatory conduct by, among other ways, being denied employment opportunities in favor of less experienced and less qualified individuals who were men, who were not over 40 years of age and who were not black and/or not African-American. For example, Comcast assigned substantially younger and non-African-American employees to work on the most prestigious new construction projects in prime Chicago areas. When Ms. Esaw asked why she was not assigned to those prestigious projects, she was told that her "look" would not work in those areas and that Comcast's customers who lived in those areas were "prejudiced." In 2014, Ms. Esaw was stripped of her responsibility over the Gold Coast MDUs and, instead she was assigned to work in the south east corridor which included Chicago's lowest income residents and the four largest housing projects which reduced her customer portfolio by almost 50%. Despite these undesirable circumstances, Ms. Esaw nevertheless continued to excel in her position and meet and exceed her sales goals. However, despite the fact that Ms. Esaw consistently and repeatedly exceeded the sales goals which were set for her, she was never provided with Comcast MVP awards which rewarded employees with financial bonuses and professional and public commendations for excellent sales performance. Instead, Comcast repeatedly provided awards to employees who were men, under 40 years of age and/or not black or African American.

Beginning in 2012, Comcast attempted to manufacture reasons to force Ms. Esaw to quit and/or to terminate her for false and pretextual reasons. For example, in 2012 and 2013, Ms. Esaw was provided written discipline for alleged misconduct that either did not occur and/or were imposed in a manner contrary to Comcast's written policies and established practices. As stated above, Ms. Esaw was stripped of her responsibility for one of Comcast's most desirable sales areas, the Chicago Gold Coast, apparently in an effort to force Ms. Esaw to leave or fail in her position. When Ms. Esaw instead continued to exceed Comcast's legitimate expectations by, among other ways, receiving excellent performance reviews and exceeding her sales goals, Comcast falsely claimed that Ms. Esaw should be terminated for purportedly being "unprofessional" and "yelling" at a Comcast customer—a demonstrably untrue assertion that is directly contradicted by Ms. Esaw's eleven years of excellent work performance for Comcast.

Based on the information available, Comcast provided a false reason to terminate Ms. Esaw as a mere pretext to hide unlawful employment actions including, among others, discrimination in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act and retaliation for engaging in protected activity under federal employment law.